IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA A. RUTHERFORD,

    Plaintiff,

v.                                                                         No. 15-cv-0332 SMV/SCY

HARTFORD LIFE & ACCIDENT INS. CO.;
LANS WELFARE BENEFIT PLAN FOR EMPS.; and
LOS ALAMOS NAT'L SEC., LLC BENEFITS & INV. COMM.,

    Defendants.[1]

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

THIS MATTER is before the Court on Defendants Hartford Life and Accident Insurance Co.'s and LANS Welfare Benefit Plan for Employees' (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support, filed on June 19, 2015, and their Notice of Erratum, filed on June 22, 2015. [Docs. 21, 23] (collectively, "Motion"). Defendants request that the Court dismiss Plaintiff's First Amended Complaint [Doc. 13] in its entirety as time-barred. [Doc. 21-1] at 6–8. In the alternative, Defendants request that Plaintiff's claim for breach of fiduciary duty (Count III) be dismissed, arguing that she cannot assert it concurrently with her claims based on the denial of benefits (Counts I and II). *Id.* at 8–11. The Court heard oral argument on the Motion on September 2, 2015. Clerk's

---

[1] Defendant Los Alamos National Security, L.L.C. Benefits and Investment Committee has not yet been served, nor has an attorney filed an appearance or submitted any pleading on its behalf. Any references to "Defendants" in this Memorandum Opinion and Order refer only to Defendants Hartford Life and Accident Insurance Co. and LANS Welfare Benefit Plan for Employees.

Minutes [Doc. 38]. Having considered the parties' submissions [Docs. 21, 23, 29, 32], oral argument, and relevant law, and being otherwise fully advised in the premises, the Court will deny Defendants' request to dismiss Plaintiff's First Amended Complaint as time-barred, but will grant Defendants' request to dismiss with prejudice Plaintiff's claim for breach of fiduciary duty (Count III).

## Background

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff alleges the following facts:

Plaintiff was a nuclear engineer employed by Los Alamos National Security ("LANS"). [Doc. 13] at 3, ¶ 8. On June 1, 2006, LANS and Defendant LANS Welfare Benefit Plan for Employees provided the LANS Defined Benefit Eligible Disability Program ("LANS DB Plan") to eligible employees, including Plaintiff. [Doc. 13] at 4, ¶ 16. The document governing the LANS DB Plan is the "Benefit Program Summary." [Doc. 13-1] at 1. The LANS DB Plan provides short- and long-term disability income to employees who meet certain participation and eligibility criteria. [Doc. 13] at 5, ¶ 17; *see generally* [Doc. 13-1].

Plaintiff was diagnosed with Stage I breast cancer in 2011. [Doc. 13] at 6, ¶ 24. She underwent chemotherapy and radiation, as well as a lumpectomy procedure. [Doc. 13] at 6, ¶ 25, 28. Plaintiff suffered and continues to suffer various maladies, including overwhelming fatigue, esophageal dysmotility, insomnia, cognitive difficulties, and pain stemming from chemotherapy and radiation toxicity. *Id.* at 6–7, ¶¶ 29–33. She claims that she has been "disabled from any occupation" from January 8, 2012, to the present. *Id.* at 7, ¶ 35.

On July 27, 2012, Defendant Hartford Life and Accident Insurance Co. approved Plaintiff's claim for short-term disability benefits. [Doc. 13] at 7, ¶ 39. Her short-term disability benefits were extended through July 14, 2013. *Id.* at ¶ 45.

On May 19, 2013, Plaintiff initiated a claim for long-term disability benefits ("LANS DB benefits") under the LANS DB Plan. [Doc. 13] at 7, ¶ 36. On May 30, 2013, a representative for Defendant Hartford notified Plaintiff "that her claim for LANS DB benefits was denied because she did not meet the definition of disability." [Doc. 13] at 10, ¶ 58.

On November 22, 2013, Plaintiff appealed Defendant Hartford's denial of her LANS DB benefits. [Doc. 13] at 11, ¶ 66. Defendant Hartford denied Plaintiff's appeal in a letter dated February 7, 2014. [Doc. 23-1] at 2. Plaintiff alleges that she received notification of the denial of her appeal on February 17, 2014. [Doc. 13] at 13, ¶ 77. Prior to receiving such notice, on February 14, 2014, Plaintiff submitted "additional medical information." *Id.* at ¶ 75. Defendant Hartford did not respond to Plaintiff's submission of additional medical information in the time required under the LANS DB Plan. *Id.* at ¶ 76.

On March 16, 2015, Plaintiff filed her Complaint in the First Judicial District Court for the State of New Mexico, requesting declaratory relief and recovery of benefits. [Doc. 1-1] at 8, 19–21. Defendants removed the action to federal court on April 22, 2015. [Doc. 1] at 1. On May 11, 2015, Plaintiff filed her First Amended Complaint [Doc. 13], asserting three claims for relief. In Count I, Plaintiff requests declaratory relief pursuant to 29 U.S.C. § 1132(a)(1)(B) (codifying ERISA § 502(a)(1)(B)). [Doc. 13] at 13–14, 18. In Count II, she requests recovery of benefits owed since April 1, 2013, pursuant to § 1132(a)(1)(B). *Id.* at 14−16, 18. In Count III,

she claims breach of fiduciary duty pursuant to § 1132(a)(3) (codifying ERISA § 502(a)(3)).  *Id.* at 16–17, 19.

Defendants filed the instant Motion on June 19, 2015.  [Doc. 21].  Defendants filed a Notice of Erratum on June 22, 2015, submitting the February 7, 2014 final denial letter as an attachment to the Motion.  Plaintiff responded on July 17, 2015.  [Doc. 29].  Defendants replied on August 17, 2015.  [Doc. 32].  The Court heard oral argument on September 2, 2015.  [Doc. 38].  For the reasons discussed below, the Court will deny Defendants' request to dismiss Plaintiff's First Amended Complaint as time-barred, but will grant Defendants' request to dismiss with prejudice Plaintiff's claim for breach of fiduciary duty (Count III).  Counts I and II will remain.

## **Standard for Motions to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  With respect to the Rule 12(b)(6) motion, plausibility means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 663.  The factual allegations in the complaint against defendants "must be enough to raise a right to relief above the speculative level."  *Christy Sports, L.L.C. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).

4

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "[A] plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation omitted).

Stated differently, the Rule 12(b)(6) analysis requires two inquiries. First, courts identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 678. Second, courts consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 680–81. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *See id.* at 682–83. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* at 678.

## Analysis

I.   **The Contractual Limitations Provision is Ambiguous and Unenforceable.**

Defendants argue that Plaintiff's claims are barred by the one-year contractual limitations provision set forth in the Benefit Program Summary. [Doc. 21-1] at 7–8; [Doc. 32] at 2–9. The contractual limitations provision provides that a plan participant "cannot start any legal action

5

until 60 days after proof of the claim has been given nor more than one year after *the time proof of the claim is required*." [Doc. 13-1] at 17 (emphasis added).  Defendants contend that the one-year limitations period expired long before Plaintiff filed her claim under ERISA.  In their briefing, Defendants offer their interpretation of the contractual limitations period, advancing two potential start dates for the running of the limitations period.  [Doc. 21-1] at 4; [Doc. 32] at 4–6.  Plaintiff's ERISA claim would be untimely under either potential start date.

In response, Plaintiff argues that the contractual limitations provision is ambiguous and unenforceable.  [Doc. 29] at 7–9.  She contends that an applicant for benefits must understand the date on which "proof of the claim is required" in order to calculate "the latest date when legal proceedings may commence[.]"  [Doc. 29] at 8.  "[T]his is a virtual impossibility," she argues, as the Benefit Program Summary fails to define when "proof of the claim is required" and does not use the term "proof of the claim" at any other point.  *Id.* at 7–8.  Accordingly, she argues that the provision is ambiguous and unenforceable, and that dismissal is inappropriate at this time.  *Id.* at 7.

ERISA requires an employer to furnish a "summary plan description" to plan participants and beneficiaries.  29 U.S.C. § 1022(a).  The summary plan description must describe, *inter alia*, any "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  § 1022(b).  The summary plan description is to "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants . . . of their rights and obligations under the plan."  § 1022(a).  The summary plan description in the present case is the Benefit Program Summary.

6

A participant of an employee benefit plan covered by ERISA may bring a civil action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due under the terms of the plan. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 608 (2013). ERISA does not contain a limitations provision for private civil actions brought under § 1132(a)(1)(B). *Id.* at 610; *Salisbury v. Hartford Life & Acc. Co.*, 583 F.3d 1245, 1247 (10th Cir. 2009) (citing *Lang v. Aetna Life Ins. Co.*, 196 F.3d 1102, 1104 (10th Cir. 1999)). Parties are free to contractually agree upon a limitations period. *See Heimeshoff*, 134 S. Ct. at 611; *Salisbury*, 583 F.3d at 1247. In the absence of a contractual limitations period, courts are to apply "the most closely analogous statute of limitations under state law." *Lang*, 196 F.3d at 1104 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989)).

"An ERISA plan is nothing more than a contract." *Salisbury*, 583 F.3d at 1247. Accordingly, the "standard tenets of contract construction" apply. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000); *see Haymond v. Eighth Dist. Elec. Benefit Fund*, 36 F. App'x 369, 372 (10th Cir. 2002). "In interpreting an ERISA plan, the court examines the plan documents as a whole and, if unambiguous, construes them as a matter of law." *Admin. Committee of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004). "To determine whether a plan is ambiguous, [courts] consider the common and ordinary meaning [of a plan provision] as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007). "Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Willard*, 393 F.3d at 1123.

"The duty of clarity falls upon the plan sponsor." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1518 (10th Cir. 1996), *abrogated on other grounds recognized by Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1295 (10th Cir. 2011); *see Haymond*, 36 F. App'x at 372 (quoting the same and finding that the contractual limitations provision contained in a plan summary description was ambiguous). The consequences of "careless or inaccurate drafting" of the summary plan description fall on "those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting . . . and ill equipped to bear the financial hardship that might result from a misleading or confusing document." *Chiles*, 95 F.3d at 1518; *see Haymond*, 36 F. App'x at 372 (quoting the same).

The dispute here concerns the contractual limitations provision contained in the Benefit Program Summary. The contractual limitations provision states: "[A plan participant or] authorized representative cannot start any legal action . . . more than one year after the time *proof of the claim is required*." [Doc. 13-1] at 17. The parties disagree as to the meaning of the term "the time proof of the claim is required." The term is not defined in the Benefit Program Summary. [Doc. 32] at 4 n.1.

The Court finds that the meaning of the term "the time proof of the claim is required" is uncertain and therefore ambiguous. The meaning of the term is not defined, in whole or in part, in the Benefit Program Summary. *See* [Doc. 13-1]; *see generally Salisbury*, 583 F.3d at 1248 (finding a term within a contractual limitations provision unambiguous, where the term was defined and the definition itself could be understood by a reasonable person). Additionally, the term is not made clear when read in conjunction with other provisions in the Benefit Program Summary. *See* [Doc. 13-1]; *see generally Young v. United Parcel Servs., Inc. Emps. Short Term*

8

*Disability Plan*, 416 F. App'x 734, 739 (10th Cir. 2011) (finding a contractual limitations provision "sufficiently clear" when read in conjunction with the appeals process description, discussed in detail in the same section of the plan summary description). The Court cannot determine when the one-year limitations period began to accrue. As there is uncertainty in the meaning of the term, the term is ambiguous. *See Willard*, 393 F.3d at 1123. Accordingly, the contractual limitations provision requiring Plaintiff to bring a legal action within "one year after the time proof of the claim is required" is unenforceable.

The Court has considered Defendants' interpretations of the contractual limitations period and finds them to be unreasonable. First, Defendants contend that the date on which "proof of the claim [was] required" cannot be later than the date on which the initial benefit determination was made, i.e., May 30, 2013. [Doc. 32] at 4–6. Defendants argue that, under the Benefit Program Summary, when read in conjunction with ERISA regulations found at 29 C.F.R. § 2560.503-1(f)(4), "the claim administrator's duty to make a benefit determination is triggered by the filing of a claim (as is a claimant's obligation to begin providing proof of the claim), but a benefit determination cannot be made unless the administrator has all of the information before it." [Doc. 32] at 5. Accordingly, they argue, "an administrator cannot make a claim determination until all proof of the claim has been received," and thus "proof of the claim is required no later than the time of the initial benefit determination." [Doc. 32] at 5. If this interpretation is correct, Plaintiff had one year from the date of Hartford's initial benefit determination—or until May 29, 2014—to initiate her litigation. [Doc. 32] at 5–6.

The common and ordinary meaning of the term "the time proof of the claim is required" simply does not lend itself to Defendants' interpretation. To begin with, the phrase obviously

9

refers to a date on which the applicant must do something, i.e., submit proof of the claim. In other words, the limitations period is triggered by something the applicant does or fails to do. It is unreasonable to suggest that the average plan participant would interpret the phrase to mean a date on which the plan administrator does something, i.e., issue an initial benefit determination.

In support of their position, Defendants rely on ERISA regulations found at 29 C.F.R. § 2560.503-1(f)(4). [Doc. 32] at 3–5. However, Plan participants should not need to look to ERISA regulations to decipher when "proof of the claim is required." Defendants have cited no authority suggesting that a plan participant must look to ERISA regulations to determine when legal action is time-barred under the contractual limitations provision. On the contrary, "[a summary plan description] is intended to be a document easily interpreted by a layman," and "an employee should not be required to adopt the skills of a lawyer" to understand it. *Haymond*, 36 F. App'x at 373 (quoting *Chiles*, 95 F.3d at 1517–18). Defendants' convoluted interpretation is not the "common and ordinary meaning" that "a reasonable person in the position of the plan participant" would have understood the provision to mean. *See Miller*, 502 F.3d at 1250.

Defendants offer a second interpretation that is likewise unreasonable. In their Motion, Defendants suggest that under a "generous reading of [the contractual limitations] provision[,] the one-year [contractual] limitations [period] was not triggered until the final denial of [Plaintiff's] claim on February 7, 2014."[2] [Doc. 21-1] at 4. Defendants essentially argue that the contractual limitations provision must begin to run from some event that is part of the benefits

---

[2] Defendants explain in their Reply that this "generous reading" of the Benefit Program Summary "afford[s Plaintiff] the right to equitable tolling during the pendency of the claim until her administrative remedies were exhausted." [Doc. 32] at 6. Defendants contend that even if equitable tolling were to apply, it would only delay the start of the limitations period until February 7, 2014, and the limitations period would still lapse prior to Plaintiff's filing of the complaint. [Doc. 21-1] at 4; [Doc. 32] at 8–9. Because the Court finds the contractual limitations provision ambiguous and unenforceable (and finds that the action is timely, as discussed further below), the Court need not determine whether equitable tolling would apply to toll the limitations period.

10

claims and appeals process, and the latest such event is the final denial, i.e., February 7, 2014. However, this interpretation ignores the fact that an ERISA plan is a contract. *See Salisbury*, 583 F.3d at 1247. The start date for the provision at issue cannot be determined by process of elimination. Indeed, while parties are free to contractually agree on the limitations period, *see Heimeshoff*, 134 S. Ct. at 611, ERISA does not require that a plan contain one. But if the plan does contain a limitations provision, it must be given its "common and ordinary meaning" based on the understanding of "a reasonable person in the position of the plan participant." *See Miller*, 502 F.3d at 1250. Here, the common and ordinary meaning of the term "the time proof of the claim is required" does not square with the interpretation advanced by Defendants. It would be quite a leap for a reasonable person in the position of the plan participant to understand that the date on which "proof of the claim is required" is the same as the date on which Defendant Hartford sent the final denial letter. Put another way, a plan participant should not have to deduce the most likely date on which the limitations period begins to run; the summary plan description should make that date clear. The Benefit Program Summary does not.

On its face, Defendants' argument is appealing. In essence, Defendants' argument is this: While we cannot tell from the language of the Benefit Program Summary the exact date on which "proof of the claim is required," we need not do so in this case, because under any reasonable interpretation of the phrase, this particular claim would be untimely. But that is a straw man argument. The legal issue before the Court is not whether, under any reasonable interpretation of an ambiguous phrase, the claim is timely or untimely. The legal issue is whether the phrase is unambiguous, and thus enforceable, or whether it is ambiguous, and thus unenforceable. Defendants' argument seems premised upon the fact that multiple reasonable

interpretations of the limitations clause (not counting Plaintiff's) are possible. In the Court's estimation, that alone proves that the phrase is ambiguous.

During oral argument, Defense counsel suggested that ambiguity could be read into any contract language. The Court disagrees. There are numerous ways in which the limitations clause in question could have been expressed unambiguously, e.g., "You or your legal representative cannot start any legal action . . . more than one year from

- the date of our letter initially denying your claim, or
- the date on which we mail our denial letter to you, or
- the date on which you receive our denial letter."

In any of those instances, the plan participant would be able to determine the start date of the limitations period without resorting to contract interpretation, reasonable or otherwise. Would that preclude all disputes regarding timeliness of an action? Probably not. In the last example, there could be a dispute over the date on which the policyholder received the denial letter. Did he receive it three days after mailing or on some later date? But that *factual dispute* would not render the limitations clause ambiguous. The plan participant would not have to sit back and think to himself, "When they say 'the date on which you receive our denial letter,' what date are they talking about?" The term is clear and unambiguous.

Alternatively, Defendant Hartford could easily have defined the term it chose to use, e.g., "We will send you a letter giving you a deadline for submitting everything you want us to consider in deciding your claim. That deadline is 'the time proof of the claim is required.'"

In this case, however, Defendant Hartford drafted the Benefit Program Summary in such a way that a plan participant would necessarily have to resort to contract interpretation in order to

deduce the meaning of the phrase "the time proof of the claim is required." As discussed, the phrase is not defined anywhere in the Benefit Program Summary. And as the briefing in this matter illustrates, the phrase is susceptible to multiple interpretations. The contractual limitations period is not "written in a manner clearly calculated to be understood by the average plan participant," as required by § 1022(a) of ERISA, 29 U.S.C. § 1132(a). The consequences of Hartford's inartful drafting of the Benefit Plan Summary should fall on Defendants, not Plaintiff:

> Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask. And it is especially not a lot to ask in return for the protection afforded by ERISA's preemption of state law causes of action—causes of action which threaten considerably greater liability than that allowed by ERISA.

*Chiles*, 95 F.3d at 1518. Accordingly, the Court finds that the phrase "the time proof of the claim is required" is ambiguous and, therefore, unenforceable.

As the contractual limitations provision requiring legal action to be brought within "one year after the time proof of the claim is required" is ambiguous and unenforceable, the Benefit Program Summary must be read without that language. In the absence of a contractual limitations period, courts are to "apply the most closely analogous statute of limitations under state law.'" *Lang*, 196 F.3d at 1104 (applying Utah's three-year statute of limitations for state-law actions based on insurance contracts to an ERISA claim for long-term disability insurance benefits); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1207 (10th Cir. 1990) (applying New York's six-year limitations period for state-law action upon a contract to an action for recovery of pension benefits under ERISA). Plaintiff suggests two potential analogous

statutes of limitations under New Mexico law: the six-year statute of limitations for an action based on a written contract, under NMSA 1978, § 37-1-3, and the three-year statute of limitations for actions based on health insurance contracts, under § 59a-22-14. The Court need not determine which of these two state statutes of limitations is most closely analogous, because Plaintiff's action to recover benefits under ERISA is timely under either. Therefore, Defendants' motion to dismiss the action as time-barred will be denied.

## II.     The Claim for Breach of Fiduciary Duty (Count III) Will Be Dismissed.

Defendants ask the Court to dismiss Plaintiff's claim for breach of fiduciary duty under § 1132(a)(3), brought in Count III of the First Amended Complaint, on the ground that she cannot assert the claim concurrently with her claims arising from the denial of benefits under § 1132(a)(1)(B) (brought in Counts I and II). Defendants contend that Plaintiff may not seek equitable relief under § 1132(a)(3) when she has an adequate remedy under § 1132(a)(1)(B) available to her. [Doc. 21-1] at 8–9 (citing *My Hang Huynh v. Liberty Life Assur. Co.*, No. CIV 10-276 JCH/RHS, 2011 WL 2340800, at *6 (D.N.M. Mar. 23, 2011) (unpublished); *Benson v. Prudential Fin., Inc.*, No. CIV 07-587 JB/ACT, 2007 WL 4334026, at *5 (D.N.M. Aug. 17, 2007) (unpublished)). Defendants argue that Count III is "based entirely upon [Plaintiff's] theory that Defendants wrongfully denied benefits to her." [Doc. 21-1] at 11. Accordingly, Defendants argue, Count III is duplicative of Counts I and II and should be dismissed.

Plaintiff agrees that she cannot seek equitable relief under § 1132(a)(3) where she has an adequate remedy under § 1132(a)(1)(B). [Doc. 29] at 13. She contends, however, that Count III does not merely "restate[] the same factual basis" as Counts I and II. Count III is distinct, she argues, because it specifically alleges that Defendants breached their fiduciary duty by:

14

> Misrepresenting terms of LANS DB Plan; relying upon standards, criteria, and definitions not incorporated into the policy;
>
> Failing to discharge duties in accordance with the documents and instruments governing the LANS DB Plan; and
>
> [I]gnoring all new evidence produced on review and thereafter which was favorable to [Plaintiff's] claim for LANS DB Benefits.

[Doc. 29] at 14 (citing [Doc. 13] at 17, ¶¶ 101(e)–(g)). Moreover, Plaintiff argues that she would have a separate claim "for breach of fiduciary duty arising out of Defendants' exclusion of relevant medical evidence from the administrative record" if the Court were to find that the denial of benefits was not arbitrary and capricious. [Doc. 29] at 14. She urges the Court to allow both claims "[a]t this early stage in the proceedings." *Id.*

Defendants are correct. ERISA provides plan participants "six carefully integrated civil enforcement provisions found in [29 U.S.C. § 1132(a)]" that constitute an "interlocking, interrelated, and interdependent remedial scheme." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Under § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA also provides equitable relief to plan participants under § 1132(a)(3). Section 1132(a)(3) is a "catchall" provision, "act[ing] as a safety net[ and] offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Accordingly, consideration of a claim under § 1132(a)(3) is improper when a plaintiff states a cognizable claim under § 1132(a)(1)(B), and the latter provision provides adequate relief for the alleged injury. *Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 826 (10th Cir. 2003); *see Benson*, 2007 WL 4334026, at *5 (collecting cases).

Plaintiff's claim for breach of fiduciary duty under § 1132(a)(3) will be dismissed because it is duplicative of her claims for denial of benefits under § 1132(a)(1)(B). Plaintiff's First Amended Complaint challenges the improper denial of benefits. *See generally* [Doc. 13]. Plaintiff has an adequate remedy for the alleged improper denial of benefits under § 1132(a)(1)(B)—which she brings in Counts I and II. Plaintiff offers three allegations to demonstrate that the factual bases underlying her claim for breach of fiduciary duty (Count III) are distinct from the factual bases underlying her claims for denial of benefits (Counts I and II). [Doc. 29] at 14. However, the issue is not whether Plaintiff has alleged a fact to support her claim for breach of fiduciary duty that is not precisely alleged elsewhere. The issue is whether § 1132(a)(1)(B) can provide adequate relief for Plaintiff's alleged injuries—i.e., whether the relief sought in Plaintiff's claim for breach of fiduciary duty can be addressed through claims for denial of benefits. And here, Plaintiff does not seek to remedy any alleged injury that cannot be addressed in her claims for denial of benefits.

Additionally, Plaintiff contends that her claim should survive because she would have a separate claim "for breach of fiduciary duty arising out of Defendants' exclusion of relevant medical evidence from the administrative record" if the Court were to find that the denial of benefits was not arbitrary and capricious.[3] [Doc. 29] at 14. Defendants concede, however,

---

[3] In support of her position, Plaintiff cites only one source of authority: *Faltermeier v. Aetna Life Ins. Co.*, No. 15-CV-2255-JAR-TJJ, 2015 WL 3440479, at *2 (D. Kan. May 28, 2015) (unpublished). In *Faltermeier*, the district court allowed the plaintiff to pursue both a claim challenging a denial of benefits under § 1132(a)(1)(B) and an equitable claim challenging the completeness of the administrative record under § 1132(a)(3). *Id.* The opinion in *Faltermeier* presumes that a challenge to the completeness of the administrative record cannot be addressed in a denial-of-benefits claim under § 1132(a)(1)(B). *Id.* Thus, in order to allow the plaintiff to challenge the record, the court permitted the equitable claim under § 1132(a)(3). *Id.* This Court reaches a different conclusion for two reasons. First, and most importantly, in the instant case, Plaintiff may challenge the completeness of the administrative record in her denial-of-benefits claim under § 1132(a)(1)(B). *See* [Doc. 32] at 11 (Defendants' conceding the point). Therefore, the equitable claim under § 1132(a)(3) is duplicative. Second, *Faltermeier* is not binding authority, and the Court declines to follow it.

that—to the extent Plaintiff is claiming that relevant medical evidence was improperly omitted from the administrative record—the Court can address this issue as part of Plaintiff's claims for denial of benefits. [Doc. 32] at 11. As Plaintiff's sought-after relief may be obtained through her claims for denial of benefits, § 1132(a)(1)(B) alone is an adequate remedy for the alleged injury. Accordingly, the Court finds that Plaintiff's claim for breach of fiduciary duty (Count III) is duplicative of her claims for denial of benefits (Counts I and II), and it will be dismissed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support and Notice of Erratum [Docs. 21, 23] is **GRANTED IN PART** and **DENIED IN PART**. Count III is dismissed in its entirety; Counts I and II remain.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply in Opposition to Defendants' Motion to Dismiss [Doc. 34] is **DENIED**; and Defendants' Motion to File Sur-Reply in Further Support of Defendants' Motion to Dismiss . . . and in Opposition to Plaintiff's Sur-Reply [Doc. 37] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**